## CYRUS WESTON *versus* WILLIAM DORR.

Where an officer attaches goods, and takes a receipt for the redelivery thereof on demand, or payment therefor, and leaves them, without removal; if he has the power to retake the property by virtue of the same precept without the consent of the owner or the receipter, which may well be doubted; he must, in order to preserve the attachment, retain the control thereof himself, or by his servant, or have the power of taking immediate possession. If the possession is abandoned, the attachment is dissolved.

If the receipter has become the *bona fide* purchaser of the same goods, subject to the attachment, and has taken possession thereof, he does not forfeit his rights thereto by suffering the officer to take possession of the same, without resistance, by virtue of another writ against the same debtor, put into his hands after the purchase; nor by taking the receipt, when handed to him by the officer, without any agreement or understanding in relation thereto, and immediately thereupon offering to the officer to restore the receipt to him.

If all the goods are taken into the possession of the officer as attached by virtue of the second writ, but a part only are returned on that writ as attached, the officer is liable for the portion of the goods not returned, as well as for the rest, without any previous demand by the owner.

Where the goods of one man are attached and taken by an officer on a writ against another person, and afterwards again attached and taken in the same manner on a writ in favor of a different creditor, a release by the owner of all claim to damages in consequence of the second attachment, in consideration of its relinquishment, has no effect upon a suit to recover damages caused by the first taking.

Where goods are tortiously taken by an officer, he is liable to the owner for all the damages sustained thereby.

TRESPASS, *de bonis asportatis,* against the defendant, as late sheriff of the county, for the acts of Erastus W. Kelly, as his deputy.

The facts, in relation to the property in the goods and the taking thereof, are given in the opinion of the Court.

The taking of the goods by Kelly, for which this action was brought, was on the 16th of June, 1841. At the trial, before WHITMAN C. J. it appeared, that on Aug. 19, 1841, two writs against Wing, one in favor of Wetherell & Whitney, and the other in favor of Wetherell, Whitney & Co. were put into the hands of Kelly for service, and he returned thereon an attachment of these goods. On March 3, 1842, the plaintiff gave a writing of which the following is a copy. " I hereby

relinquish and release all claim I may have upon the sheriff or his deputy, or any of the parties to the actions hereafter named, in consequence of certain attachments upon certain goods made August 19, 1841, on two writs, one in favor of Wetherell & Whitney and one in favor of Wetherell, Whitney & Co. ; said attachments having been made by E. W. Kelly, dep'y sh'ff. — Meaning, however, to retain and preserve all my rights against the sheriff in consequence of an attachment made in June last.

" March 3, 1842.                            Cyrus Weston."

The defendant contended, that the said Kelly had a right to take said goods on the said 16th of said June, and that he had a right to retain the whole of said goods a reasonable time, until he could make the necessary separation, no separation in fact having been previously made, and that the transactions which took place between said Kelly and said Weston, on the evening of the said 16th, were a waiver of any claim which said Weston had on said goods, and authorized said Kelly to take possession of said store, by taking the key thereof, and that the attachment and taking the key aforesaid, under the facts aforesaid, was not a taking of the goods in the store, except what are mentioned in the schedule, so as to make the defendant liable in this action ; and requested the Court so to instruct the jury.

The Judge instructed the jury, that if the sale was *bona fide*, the acts aforesaid constituted a taking of all the property and goods in the store ; and that the plaintiff was entitled to recover the value of the goods and property in the store belonging to him at the time of said taking, deducting the amount of said Sturtevant's execution and all fees thereon.

The defendant also contended, that said release was a bar to the plaintiff's suit. But the presiding Judge instructed the jury, that said release was to be laid out of the case and to have no effect.

There was evidence tending to show fraud in said sale by Wing to Weston, and evidence to the contrary, which was submitted to the jury, and a verdict rendered for the plaintiff.

A motion was made by the defendant to set aside the verdict, and an abstract and statement of the evidence was drawn up under the motion for a new trial, because the verdict was against the evidence.

*May*, for the defendant, contended, that the verdict ought to be set aside, not only because it was against evidence, but also because it was against law in several particulars.

The plaintiff waived any claim he might have had to the goods, and consented that Kelly might take them, or any portion of them, in pursuance of the receipt; and therefore there could be no action of trespass for the portion so taken.

If the plaintiff did not assent to the attachment on the 16th of June, Kelly had a right to reseize and attach them. The possession of the servant or receipter was the possession of the officer. If the plaintiff acquired any claim to the property by virtue of his purchase, it was subject to the attachment in favor of Sturtivant, and he was bound by his contract with Wing to pay off that claim and remove that attachment. This he did not do, and the attachment remained in force until the goods were taken and sold on the execution by another officer. *Carr* v. *Farley*, 3 Fairf. 328; *Nichols* v. *Patten*, 18 Maine R. 231; *Waterhouse* v. *Smith*, 22 Maine R. 337.

But if Weston did not assent that Kelly should retake the goods, and if Kelly had no right to take them by force of the receipt, still the taking was not an official act for which the sheriff is responsible. 4 Mass. R. 60; 7 Mass. R. 123; 3 Greenl. 373; 18 Maine R. 277. The taking of a receipt by a deputy sheriff is for personal security; an act in which neither the parties, nor the sheriff, have any interest. An attempt to enforce it is not an official act. *Clark* v. *Clough*, 3 Greenl. 357.

As to the goods not attached, the taking of the key and shutting the store did not amount to a tortious taking. They were not separated from the residue, and the officer had the right to a reasonable time for the purpose of doing it. *Bond* v. *Ward*, 7 Mass. R. 123; *Sawyer* v. *Merrill*, 6 Pick. 478.

The rule for assessing damages, in the instruction to the

jury, was an erroneous one.   By it, the deduction of the Sturtivant execution was not from the amount of goods sold, and sold properly on that execution, but from the amount which the jury estimated to be the value of the goods at the time of the taking; thus throwing the whole loss arising from the sale upon the defendant.

The plaintiff cannot recover, because he has released the defendant by his release of March 3, 1842.   The plaintiff might release a trespass to a portion of the goods, and not to the residue; but it is difficult to conceive how he could release a portion of an entire trespass to the same goods without releasing the whole.   Co. Lit. 232 (a); 4 Adol. & Ellis, 675; 2 Brown, C. R. 164.

*Wells,* on the same side, cited 8 N. H. R. 255; 16 Mass. R. 181; 11 Pick. 519; 13 Pick. 338; 24 Pick. 89; 9 Mass. R. 288; 16 Pick. 25; 24 Pick. 196; 15 Pick. 40; 11 Mass. R. 219.

*Vose,* for the plaintiff, stated the facts, as he understood them, and said, that notwithstanding the attachment Wing had a perfect right to sell these goods, and the plaintiff had the same right to purchase them, as he would have had, if he had not given a receipt for them.   *Denny* v. *Willard,* 11 Pick. 525; *Knap* v. *Sprague,* 9 Mass. R. 258.   Sturtevant's attachment, before made, might remain good; but the sale would as effectually transfer the property, as to the attaching officer, and all other persons, as if no attachment had been made, subject to that attachment only, if it had not been abandoned.

The jury have found, that the conveyance was made, *bona fide,* and the property delivered, before any interference with it by Kelly on June 16, 1841.

The officer had no right, after that conveyance, to take these goods; and in so doing he became a trespasser.   The officer had taken a receipt for the property, and suffered it to go back into the hands of the debtor, and the attachment on the goods was dissolved.

The requested instruction was properly withheld.   It re-

quested the Judge to assume the province of the jury, and instruct them that a fact was proved, when no such proof had been made.

There is no ground for saying, that the officer, Kelly, did not so take the goods, as to make him liable, unless he could hold under his attachment on the 16th of June. He turned the owner out of the possession of the goods and kept him out.

It was considered, that the law was too well settled to need the citation of authorities, that the value of the property at the time of the taking was the measure of damages, in an action for the property.

The actions commenced in August were settled by the parties, and the plaintiff agreed in consideration thereof to claim no damages in consequence of the taking under those writs, and so the paper says. This could have no effect on the present action for an entirely distinct trespass. But the paper itself says in express terms, that it is not to affect this suit.

*Wells* replied for the defendant.

The opinion of the Court was drawn up by

TENNEY J. — This is an action of trespass, alleged to have been committed by E. W. Kelly, a deputy of the defendant. Kelly having attached certain goods described in a schedule annexed to his return upon a writ in favor of one Sturtivant against John O. Wing, the owner thereof, on the 11th June, 1841, and having kept the same by his servant without removal, till the 14th of the same month, took a receipt of certain goods of the value of $300 signed by the plaintiff and one Benson, and thereupon delivered up all the goods, and left the plaintiff in possession of the store. Wing and the plaintiff the same day commenced taking an account of the goods, which they completed on the 16th of June, and the plaintiff became the *bona fide* purchaser thereof, agreeing to pay, as a part of the consideration, the debt to Sturtivant. On the same day, after the purchase, the plaintiff, Wing and others being in the store, Kelly informed the plaintiff, that he had a writ in favor

of Samuel Parsons & al., against Wing, and said he must take the goods; the plaintiff replied, " Well, they are all here ;" and Kelley handed him the receipt, which the plaintiff took and put in his hat, and told Kelly he had purchased the goods ; Kelly replied, that he " supposed that was the fact, but he acted under instructions, was indemnified and must go ahead ; the plaintiff told Kelly he had better take the receipt which he refused to do ; but took the key of the building, the goods which had been attached, and others being there, and locked up the store ; and made return upon the writ in favor of Parsons & al. of the goods before attached, subject to the former attachment; the plaintiff left the store and made no objection to the course taken by Kelly.   Sometime afterwards, all the goods in the store were returned by Kelly as attached upon writs made upon two other debts against Wing, which were subsequently settled by the notes of the plaintiff and Wing, the creditors having made a discount in consideration of a release to the defendant of all liability on account of the attachment upon these two writs.   The store in which the goods were, was owned by Kelly, who had leased the same by parol to Wing.   Neither Wing nor the plaintiff had been notified to quit the store previous to the attachment upon the writ of Parsons & al. or to remove the goods.   The goods mentioned in the schedule, were sold upon the execution issued upon a judgment recovered by Sturtivant in his action against Wing and return thereof made.   A bag of wool, which had been left in the store by the plaintiff to be sold before the first attachment, was in the store, when Kelly took possession on the 16th of June.

The Judge instructed the jury, that if the sale from Wing to the plaintiff was *bona fide,* the foregoing facts constituted a taking of all the goods in the store, and the plaintiff was entitled to recover the value thereof at the time of the taking, deducting the amount of Sturtivant's execution, and all fees thereon.

To preserve an attachment of property, like that in contro-

versy, the officer who made it must retain the control thereof himself or by his servant, or have the power of taking immediate possession ; if the possession is abandoned, the attachment is dissolved. *Nichols* v. *Patten*, 18 Maine R. 231 ; *Waterhouse* v. *Smith*, 22 ib. 337. It may well be doubted, whether the officer can retake such property, after he has delivered it up, on receiving security for its redelivery, or the payment of its value, without the consent of the owner or the receipter ; the officer is interested only to have the means of satisfying the judgment, which the attaching creditor may recover. On a fair construction of such instruments, as the receipts usually given for property attached, is it the understanding of the parties thereto, that before judgment, the officer can take possession of the property, unless the assent of the owner or receipter is first obtained, especially, if there be no suggestion, that the latter is not of sufficient ability to make indemnity ? To give him this power would certainly allow him to disregard the spirit of his contract, and expose the property often to a ruinous sacrifice. The promise of the receipter is to do one of two things, and like other contracts of the kind the election is with him. In *Robinson* v. *Mansfield*, 13 Pick. 139, the Court hold the lien created by an attachment discharged, and the obligation of the receipter substituted for the goods. In *Carr* v. *Farley*, 3 Fairf. 328, C. J. Weston says, " a wanton and unnecessary interference is not to be encouraged." But if the receipter and the owner of the goods attached consent that they may be taken, the officer cannot be a trespasser.

In the present case Kelly having had possession of the goods in the store, under attachment, by his servant, from the 11th to the 14th June, and then having *delivered them up*, on the promise of two persons to redeliver them on demand, or pay their value, must be considered to have abandoned the possession, and permitted them to go to whomsoever they belonged ; the receipters could not be the servants of the officer in the same sense as was the one who held the possession previously, after the attachment, and they held no different relation to the officer, than that of receipters, where the pro-

perty is permitted to go back to the hands of the debtor. Here it did go into the hands of the debtor by the permission of the receipters, for immediately after, by the sale, he was exercising the most important acts of ownership and dominion over it. The plaintiff afterwards succeeded to all the rights of Wing, by the purchase and possession of the goods. *Knapp* v. *Sprague,* 9 Mass. R. 258; *Denny & al.* v. *Willard,* 11 Pick. 525.

The exceptions disclose no evidence of a demand by Kelly of the goods on the evening of the 16th June, that they might be held for his indemnity for his return thereof upon Sturtivant's writ; but on the other hand announced that it was his duty and intention to attach them upon another writ; he did not take possession upon what he treated as a voluntary surrender of the goods by the plaintiff, but on being notified by the latter of his purchase, he expressed his knowledge of that fact, but said he "acted under instructions, was indemnified and must go ahead." When the receipt was handed to the plaintiff and taken by him, it was in consequence of no agreement or understanding, so far as the case finds, that the goods were to be delivered, or the receipt cancelled; at the same time the plaintiff offered to return the receipt as a subsisting contract. The return of the goods upon the second writ, under the date of the 16th of June, shows they were taken by the officer for that purpose, and not for his indemnity for his liability on the first writ. The submission of the plaintiff to the acts of Kelly, done in obedience to his instructions, his indemnity and supposed duty, cannot prejudice his claim; remonstrance would have been unavailing, and resistance criminal.

The taking complained of by the plaintiff was one entire act, and was declared by Kelly, and shown by the defence, to have been upon the writ in favor of *Parsons & al.* v. *Wing;* the plaintiff was dispossessed of all the goods, and because a part only were returned upon the writ, the defendant cannot escape liability.

The store being the property of Kelly cannot be a protection to the defendant. If the plaintiff had no right to continue in the occupation, the goods having been rightfully deposited in the store, he was entitled to a reasonable time, after notice, within which to remove them, which was not allowed. *Ellis* v. *Paige*, 1 Pick. 43. But the officer gave no such reason for excluding the plaintiff and shutting the store, but one altogether different.

The wool was taken by Kelly as much as any of the goods in the store, and he was not excused, because the plaintiff held it by a different title, from that of the other goods.

The release given by the plaintiff to the defendant was for a distinct and subsequent act of the deputy sheriff; it was specially agreed, that it should have no effect upon the claim prosecuted in the present suit, and the instruction of the Judge was fully authorized, that the jury would disregard entirely the release.

The rule of damages was correct. The taking proved, was not one, which the officer was authorized to make, but was tortious, and the defendant was liable for all the injury occasioned thereby.

The question of fraud was one peculiarly within the province of the jury to settle. There was evidence sufficient to authorize the finding upon this point, standing uncontradicted; and that of a controlling character was not so conclusive as to warrant the Court to disturb the verdict.

*Exceptions and motion overruled.*