## Commonwealth *versus* Contner.

1. A sheriff without legal authority withdrew from, and surrendered the possession of goods levied on by him under an execution, and made return to that effect on the execution: *Held*, that he thereby incurred a liability on his official bond, to the plaintiff in the execution, to the extent of his injury by such misconduct.

2. On such withdrawal and surrender the lien of the execution on the goods was gone, and the plaintiff had no claim on the proceeds of their sale, on a subsequent *fi. fa.*

3. *Prima facie* the sheriff is liable for the whole amount endorsed on the execution, but he may show that by no diligence could he have collected so much. What he could have made for the plaintiff by a proper discharge of his duty, is the proper standard of his liability, viz., what the property would have brought at a fair sale made under the direction of the plaintiff.

4. *Rent* must issue out of *land;* and if real and personal property leased are so mixed together in the lease, that it cannot be determined how much of the consideration is to be paid for the chattels, and how much for the use of the real estate, there can be no distress for non-payment of it. But where it can be ascertained from the lease what was to be the compensation for the use of the personal estate, and how much the rent of the real estate, the landlord may claim the amount of rent to which he is entitled under the lease, out of the proceeds of sale by the sheriff of the personal property on the premises leased.

5. In a suit against the sheriff for relinquishing property on which he had

[Commonwealth *v.* Contner.]

levied, he may show that the property was subject to a lien for rent; and the plaintiff can recover only to the extent of the fair value of the property levied on, above the amount of the sum due and claimed for rent.

ERROR to the Common Pleas of *Mifflin county.*

This was an action in the name of the Commonwealth of Pennsylvania, at the suggestion of Ellis P. Irwin, against D. McKean Contner, sheriff of Mifflin county, and his sureties, upon his official recognisance. Ellis P. Irvin having obtained a judgment against Francis A. Whitaker in the District Court of Philadelphia, for $2160.85, a *testatum* writ of *fieri facias* was issued thereon to Mifflin county. The writ was delivered to sheriff Contner, and he was requested to levy on a large amount of personal property at the Matilda Furnace, in the possession of Whitaker. The sheriff made his levy; and John F. Cottrell gave notice that the greater part, if not all of that property, belonged to him, and had been leased to Whitaker with the furnace property. Upon receiving this notice, sheriff Contner applied to the District Court at Philadelphia, under the provisions of the 9th section of the Act of 10th April, 1848, relating to the jurisdiction and proceedings in certain courts (*Pam. Laws of* 1848, p. 450), for a rule on the claimant to maintain or relinquish his claim of property in the goods levied on. Cottrell answered the rule, and it was made absolute on the 7th of July, 1849. The Court thereupon ordered " that a feigned issue shall be framed upon a wager in the usual form, to determine whether the right of property in the goods levied on and claimed, or any part thereof, is in the defendant, or in the claimant, in which issue the claimant shall be the plaintiff, and the plaintiff in the execution the defendant. That the declaration in such issue shall be filed by the claimant *within fourteen days,* and within the said time the claimant shall give bond to the plaintiff in such penal sum and with such security as shall be approved by one of the judges of this Court—conditioned that the goods levied on and claimed shall be forthcoming upon the determination of the said issue, to answer the execution of the plaintiff, if said issue shall be determined in favor of the said plaintiff in the execution—or so many of them as shall be determined to belong to the defendant, and to be subject to the execution of the said plaintiff. *That when said declaration is filed and bond given, the sheriff do withdraw* from the possession of such of the goods and chattels seized by him under the execution as are claimed by the claimant—that no action be brought against the said sheriff in respect of the said goods and chattels—and that the question of costs and all further questions be reserved until after the trial of said issue."

After the receipt of a letter from the counsel of the sheriff of the city and county of Philadelphia, purporting to state the terms of the order of the Court, sheriff Contner, as was alleged on part

[Commonwealth *v.* Contner.]

of plaintiff's counsel, without any authority from the Court, relinquished his levy upon the property and gave it up to Whitaker, two days after the above order had been made by the Court. He immediately returned his writ, with a return endorsed upon it, stating that upon June 14, 1849, by virtue of the writ he had levied upon a small stock of store goods, 2 horses, 1 two horse wagon, 20 mules and their gears, 7 wagons, coal beds, 5 tons of pig metal, a lot of furnace tools, 2 carts, 1 sofa, 1 doz. chairs, and a lot of carpet, all at Matilda Furnace, Mifflin county, Penn., as the property of Francis A. Whitaker. And further, that he did on the ninth day of July, A. D. 1849, withdraw from the possession of the said goods and chattels according to the direction of the within-mentioned Court, made on the 7th day of July, 1849. Cottrell never gave a bond or filed a declaration in the feigned issue directed.

On the 4th of August, the District Court granted a rule on Cottrel, the claimant, to show cause why he should not be barred of any action against the sheriff or his officers, and why the sheriff should not be directed to proceed and sell the goods levied on and claimed; which rule was made absolute on the 3d of September, 1849. On the same day, the counsel of Irwin issued a writ of *venditioni exponas* to sheriff Contner, to sell the goods which he had levied on; to which he returned, that by virtue of a writ of *fieri facias* issued out of the Court of Common Pleas of Mifflin county, No. 129, to August Term, 1849, at the suit of Washington Righter *v.* Francis A. Whitaker, for a debt of $532.25, the same personal property recited in this writ of *venditioni exponas*, Francis A. Whitaker's interest therein and thereto, was levied upon and sold for the sum of $2100, on the 28th day of July, A. D. 1849, and that he had made return to Court accordingly; to which return he made reference. The Court of Common Pleas of Mifflin county appointed an auditor to distribute the fund in Court.

The attorney of Irwin was notified by the auditor, but neither he nor Irwin appeared before him. The auditor awarded the amount of the sale, less costs and expenses, to John F. Cottrell, upon a claim by him for rent, under lease.

The judgment on which the execution on which the property was sold issued, was *confessed* by Whitaker. The property was bought in for Cottrell at the sale under the Righter writ. The sheriff delivered the property to Cottrell without receiving any of the purchase-money, except the amount of his costs. There was no money in Court, or in the hands of the sheriff, when the auditor was appointed, or at any time during the progress of the audit.

The plaintiff assigned, for breaches of the recognisance, 1. The wrongful neglect and omission of the sheriff, in not executing and selling the property under Irwin's writ of *fieri facias*. 2. The sheriff's withdrawing from the possession of the property previously

[Commonwealth *v.* Contner.]

levied on under Irwin's writ, and falsely returning thereto that he had done so according to the direction of the District Court, made on the 7th day of July, 1849. 3. The neglect and refusal of the sheriff to execute Irwin's writ of *venditioni exponas.*

To which the defendants pleaded "covenants performed and payment with leave, &c."

Upon the trial of the cause, the plaintiff gave in evidence the entire record in the case of Irwin *v.* Whitaker, in the District Court of Philadelphia, and the proceedings under the sheriff's interpleader act.

The defendants produced the auditor appointed by the Court of Common Pleas of Mifflin county, in the case of Righter *v.* Whitaker, who stated that he notified the attorney of Irwin to appear before the auditor in that case, and that there was no appearance by Irwin, or on his behalf.

The admission of such testimony constituted the first exception.

The defendants offered in evidence the record of the Court of Common Pleas of Mifflin county, in the case of Righter *v.* Whitaker, to be followed by the auditor's report in that case, and a notice from the attorney of Irwin to the sheriff, that he claimed to have the proceeds of the sale under the Righter writ paid to Irwin.

The admission of that record was the second ground of exception.

The auditor's report in that case was admitted in evidence for the defendants, *under the third exception.*

The defendants offered a lease of the Matilda Iron Works, together with a large amount of personal property, from John F. Cottrell to Francis A. Whitaker, dated the 17th day of June, 1849, reserving an annual rent of $3500. The lease was of the Matilda Furnace property, and farm connected therewith; also, the personal property, consisting of store, teams, &c., as per inventory, at a valuation fixed, &c.; also, the necessary wood-leave for house, farm, and for building purposes; also, the ore privileges, &c.; and wood-leave to the amount of 2000 cords annually, provided it is coaled and used in said furnace, for the term of five years from the 1st day of April, 1848. The rent of $3500 annually was to be paid half-yearly, in advance. It was also agreed, that if Whitaker paid Cottrell for the personal property after that time, the rent for the real estate and ore-leave for the furnace and wood-leave, to be $2500 per annum.

The admission of that lease was the subject of the fourth exception. The remaining exceptions were to the judge's charge.

Verdict was rendered for the defendant.

Parts of the charge assigned for error, were to the effect that the plaintiff Irwin might have appeared before the auditor in the case of Righter *v.* Whitaker, and made claim in the fund. That from anything that appears, Cottrell would be entitled, in the

[Commonwealth *v.* Contner.]

first place, after payment of costs of the sale, to the year's rent of $3500. That Cottrell would be entitled to the whole of the rent, though it was reserved in a lease *of real and personal estate.* That if there was a year's rent due when Irwin's writ was levied, and the property would not have brought more at a fair sale, than the amount of the rent due, the plaintiff has not lost anything by the sale.

*W. S. Price,* of Philadelphia, for the plaintiff in error.—The sheriff should not have withdrawn the levy, until bail was given; also that the Court charged that if bail had been given, that Irwin could have got nothing, as Cottrell's claim for rent would have absorbed the proceeds. To this he replied that it did not appear but that the goods might have been bid to an amount more than sufficient to pay the rent due. Both real and personal estate were leased, and the rent which is preferred by the Act of Assembly, is that which accrues out of *real* estate; and where such rent is claimed out of personal estate, the rent is liable to apportionment.

*Woods,* and *J. T. Hale,* contrà.—The value of the property sold was the subject of testimony, and was submitted to the jury. The Court submitted to the jury whether the sheriff had done anything to *reduce its value;* and if so, that he would be liable: 5 *Watts* 300, McCoy *v.* Reed.

*Banks,* in reply.

The opinion of the Court was delivered, June 17, by

BLACK, C. J.—This suit was brought by Irwin on the official bond of the sheriff of Mifflin county, against the sheriff and his sureties. It appeared, that a *testatum fieri facias,* to the sheriff of Mifflin, had issued out of the District Court of Philadelphia, against Francis A. Whitaker, at the suit of Ellis P. Irwin, for $2160.85. By virtue of this writ the sheriff, on the 14th of June, 1849, levied on the personal goods of Whitaker. The goods thus levied were claimed by John F. Cottrell, as his property. Agreeably to the Act of 10th April, 1848 (*Pamph.* 450), the District Court made a rule on Cottrell to maintain or relinquish his claim. This proceeding resulted in an order on the parties (Cottrell and Irwin) to form an issue for the trial of the title to the goods, and a direction to the sheriff to withdraw from the possession of them, *when* Cottrell should file his declaration in the issue, and a bond with approved security for the forthcoming of the property, in case the issue should be determined in favor of Irwin. The sheriff, immediately upon this, and without waiting for the bond to be filed, relinquished his possession of the goods, and so returned the writ. The bond was *never* filed, nor the issue proceeded in. Soon afterwards, Whitaker confessed judgment, in the Common Pleas of Mifflin, to one Righter, who issued execution, and under his writ

[Commonwealth *v.* Contner.]

the same goods were levied. Cottrell then, instead of claiming title to the property, gave notice to the sheriff, that the defendant Whitaker was his tenant and owed him a year's rent, amounting to $3500, of which he demanded payment out of the proceeds of the sale. The goods were sold to Righter, the plaintiff in the execution, for $2100, a price, which the evidence affords some reason to believe, was much below their real value. At the instance of the sheriff, an auditor was appointed to make distribution. He awarded the whole fund, after deducting costs, to Cottrell on his claim for rent, and the Court confirmed his report.

There can be no doubt that the sheriff, in withdrawing from the possession of the property, before any bond was given, or declaration filed, and in refusing to go forward with the sale under Irwin's execution, acted without warrant or authority of law, and contrary to his plain duty. It was a voluntary and illegal surrender of his hold upon the goods, which, in justice to the plaintiff, he was bound to retain. The proceeding in the District Court no more authorized him to give up the goods, under those circumstances, than if such a proceeding had never been commenced. Nor do we think there is the slightest evidence from which a jury could possibly infer that his conduct was authorized by the plaintiff or his attorney. Mr. Wollaston, the only witness called who knows anything of the matter, swears that he did not direct the writing of Mr. Porter's letter. Another witness testifies to Wollaston's declaration that he had authorized it. But this was hearsay; and though it might tend to weaken the credibility of Wollaston's oath, it does not establish affirmatively the fact which that oath denied. It does not alter the case to say that this was the declaration of the plaintiff's agent. The mere assertion of a fact cannot amount to proof, though it may have some relation to a business in which the person making it was employed as agent. If any fact, material to the interest of a party, rest in the knowledge of an agent, it is to be proved by his testimony, not by his mere statement without oath (10 *Ves.* 123). In every view of the case, we must take it that the sheriff gave up these goods upon his own responsibility.

It is insisted, however, that the execution still kept its lien on the goods, and the plaintiff might have gone before the auditor and into Court, claiming the proceeds, which not having done, his right of action against the sheriff is gone. We cannot assent to this. Admitting the lien of the plaintiff on the money to have been in full force at the time it was distributed, what authority had the sheriff to remit him to a remedy which he did not choose to adopt for himself? Having placed his writ in the hands of the proper officer, it was his right to have it executed; and when the sheriff wrongfully refused to do his duty, action accrued to the plaintiff to recover it from the sheriff. He had the sheriff and his

sureties liable, and was bound to look no further. Supposing no
other execution had intervened, and the goods had still remained
unencumbered in the hands of the defendant, would that have been
a defence to the defaulting officer? Or if his judgment had been
a lien on land, could he have insisted upon the plaintiff looking to
it before demanding satisfaction from him? Whether the decree
of distribution was right or wrong, therefore, it was no defence to
the sheriff in this action.

But even if this were otherwise, it would make no difference;
for we are of opinion that the lien of the execution was wholly
gone, and that Irwin had no claim whatever to the fund raised by
the sale under Righter's writ; and the loss of the lien having
resulted from the sheriff's non-performance of his duty, the plain-
tiff's right to recover would be a clear one, even if it were true
that the decree of distribution concluded him, as to all that he might
have been able to get by pressing his claim before the auditor.
Irwin had no right to the fund at the time of the distribution,
because the sheriff had previously destroyed his right to it, and
because his only remedy was an action against the sheriff for the
wrong which produced that effect. The law having said that he
should not receive satisfaction out of the fund because the sheriff
was liable, would be reasoning in a vicious circle if it would add
that the sheriff was not liable because the creditor did not get
satisfaction out of the fund.

A sheriff may levy on goods, and the lien of the execution is not
lost, merely because the goods are left in the possession of the
defendant. This doctrine is, in some degree, peculiar to Penn-
sylvania. Its existence has been regretted by this Court (8 *Ser. &
R.* 510,) and it has been totally repudiated by the Circuit Court
of the United States for this district (1 *Wash. C. C. R.* 29). It
has been narrowed of late years (3 *R.* 345), and is growing nar-
rower still. Judicial authority, indeed, cannot abolish it; we can
only say that we will not extend it. But allowing the rule to be
well founded on principle, and giving to it the weight which is due
to it in that aspect, it does not follow that the lien remains in a
case like this. There is a very wide and manifest difference
between mere forbearance on the part of the sheriff to take the
goods into his custody, and an express and formal surrender of
them to the defendant, put into writing, incorporated in the return,
and placed on the record. Not to take them is one thing, and to
redeliver them after they are taken, is another and a quite differ-
ent thing. Such an act can only mean that the sheriff has deter-
mined not to hold them, or sell them under the execution, but to
let the defendant do with them what he will. So I think it has
always been held. "I am not aware," says Lord ELLENBOROUGH
in Rhodes v. Orundale, 1 *Maule & Selwyn* 711, "of any case where,
upon an *abandonment* of possession by the sheriff, the goods have

still been holden to remain in the custody of the law." And in
Achland *v.* Paynter, 8 *Price* 95, all the barons of the Exchequer
held, that an abandonment of possession, after levy and seizure,
left the goods open to be taken by another creditor. These autho-
rities are not only to the very point, but entitled to great weight;
for, although our law differs from that of England, in suffering the
execution to retain its lien where the sheriff has *forborne* to remove
the property, we have never decided that he incurs less respon-
sibility here than elsewhere, if *he abandons* his possession or
expressly declares his determination not to proceed. The lien of
an execution results from the right to levy. If the return-day is
suffered to come and go without a levy, the lien is lost. Where
the levy, though actually made, is not returned, there is no lien;
and this whether the non-return was caused by the order of the
plaintiff, or by the unauthorized act of the sheriff: 7 *W. & Ser.*
134. Where the sheriff returns that he took the goods of the
defendant in execution, and afterwards withdrew from the posses-
sion of them, the legal effect of the whole return is, that there is
at the time of the return no existing levy at all.

Neither does it seem to us that the principle of this case can be
likened to that of Sedgwick's Appeal, 7 *W. & Ser.* 260. The
lien was retained in that case, because the property was in the
custody of the law, placed there by the operation of a statute, and
neither the sheriff nor the plaintiff was in any default. After what
I have already said, it cannot be necessary to add, that there are
no such reasons here. If the order of the District Court had been
strictly complied with, first by Cottrell and afterwards by the
sheriff, the question, whether the lien of the execution remained,
might not even then have been free from doubt. There are points
of difference, as well as points of resemblance, between the stay
law and the Act of 1848, which will require consideration before
that matter is settled.

The point next to be considered regards the extent of the
sheriff's liability. *Primâ facie*, he is responsible for the whole
amount of the sum endorsed on the execution (10 *Mass. R.* 474).
But he may reduce it by showing that no diligence of his could
have collected so much (1 *Hill* 276). If, therefore, the value of
the property was less than the debt, the plaintiff can only recover
as much as it was worth. It is also true, upon the same principle,
that if the goods were encumbered by a prior lien, which would
have absorbed a portion of the proceeds in case a sale had been
made at the proper time, the amount of such lien must be deducted
from the value. What the sheriff could have made for the plain-
tiff, by a proper discharge of his duty, is the just and reasonable,
as well as the legal, standard of his liability. In estimating the
value of the property, the price it would have brought at a fair
sale, under the direction of the plaintiff, who was interested in

[Commonwealth v. Contner.]

bringing it up to a certain point, is to be looked to. What it did actually sell for, is no more than a circumstance.

This brings us to the question, whether there were any liens on the goods prior or superior to that of the plaintiff's execution. None is pretended, except that for rent, due to Cottrell. This, however, it may safely be presumed from all the circumstances, would have been enforced to the extent of the landlord's legal rights. It was reserved by a lease of the furnace and of personal property, consisting of a store, teams, &c. Now a sum of money, payable periodically, for the use of chattels, is not RENT in any legal sense of the word. It cannot be distrained for; and unless it can, it is not demandable out of the proceeds of a sheriff's sale; for this right comes in place of a distress by the plain words of the statute. Rent must not only issue out of *land*, but it must be fixed, definite, and certain in amount, whether payable in money, chattels, or labor. If, therefore, a lease so mixes the real and personal property together that it cannot be determined how much of what is called the rent is to be paid for the chattels, and how much is the profit of land, there can be no distress for non-payment of it. This lease stipulates for a rent of $3500 on real and personal property both. But they may be separated. There is a provision in it that when the tenant buys and pays for the personal property, the rent shall be abated to $2500. From this we may infer that the rent was $2500 for the furnace, and $1000 for the goods. It requires a very liberal construction to make this out in favor of the lessor. But, after careful consideration and some doubt, we are all of opinion that we may take it from the language of the lease, without violating either the natural probabilities of the case or any received rule of interpretation.

We are next to inquire how much rent was due on the land when the levy was made; and we think, plainly not more than twelve hundred and fifty dollars. Though the lease is said to be for five years, counting from the 1st of April, 1848, this was to limit the length of the term, and to fix the end of it, not the beginning. The estate of the lessee could not actually commence until the lease was made. He was to pay the rent half yearly in advance. The first half year's rent was paid, the third was not due until the 27th of June, 1849, and the second half yearly payment was all that was demandable on the 14th of June, when the goods were taken in execution.

The plaintiff was entitled to recover the amount of his claim if the property levied on was worth so much and $1250 more; and if worth less, he had a right to a verdict for the fair value above the claim for rent, unless there was something in the evidence which rendered it unworthy of belief; and the Court might properly have said so to the jury. It is unnecessary to say upon which or how many of the errors assigned we ground our judg-

[Commonwealth *v.* Contner.]

ment of reversal.  Our opinion on all of them may be gathered from what has been said.

Judgment reversed, and *venire facias de novo* awarded.