### In re HYMES BUGGY & IMPLEMENT CO.

(District Court, W. D. Missouri, S. D. June 27, 1904.)

1. BANKRUPTCY—CUSTODY OF PROPERTY—SURRENDER BY SHERIFF TO RECEIVER.
   The surrender by a sheriff to a receiver in bankruptcy of property which he had seized on a writ of replevin, before he has made his return, operates as an abandonment of the seizure, and the goods are not thereafter in the custody of the state court.

2. SAME—SEIZURES AVOIDED BY BANKRUPTCY—REPLEVIN.
   Bankr. Act, July 1, 1898, c. 541, § 67f, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450], which makes void "all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him in case he is adjudged a bankrupt," covers a seizure of property on a writ of replevin.

In Bankruptcy. On questions certified by referee.

On the 2d day of May, 1904, Parlin & Orendorff Company brought an action of replevin in the circuit court of Greene county, Mo., against the bankrupt, Hymes Buggy & Implement Company, to recover possession of certain personal property, consisting of rakes, grinders, wagons, buggies, etc., alleged to be of the value of $8,000, covering about 200 items. On receiving the writ of replevin, the sheriff on that day went to the storehouse of the bankrupt and took possession by taking the key and locking up the store. This store contained a large amount of goods of like character, marked with the name of Hymes Buggy & Implement Company, in addition to the goods claimed by the claimant. The sheriff, with the assistance of the claimant's agent on the ground, was unable to identify the goods claimed in the writ, and sent for a bookkeeper or salesman of the petitioner at St. Louis who arrived on the 3d day of May, who, with the servant of the sheriff, undertook to identify

130 F.—62

the goods claimed by the petitioner, and to make an inventory of them. This inventory was completed on that day, and handed to the sheriff perhaps on the morning of the 4th of May. On the latter day proceedings in bankruptcy were instituted by other creditors against Hymes Buggy & Implement Company, on which it was adjudged a bankrupt; and one F. M. McDavid was appointed receiver, and forthwith executed bond, and was ordered to take charge of the assets of the bankrupt estate. Thereupon, on the same day, the she \_f surrendered the possession of said goods to the receiver. Other facts will appear in the opinion of the court. Afterwards the said Parlin & Or \_dorff Company presented its petition to the referee in bankruptcy to have t'\_e property claimed to have been seized under the writ of replevin by the sheriff turned over to it on the ground that, the state court having first acquired jurisdiction of the subject-matter, the goods in question were in custodia legis of the state court. On hearing before the referee the petition was denied, and exceptions taken to the action of the referee by petitioner. The questions involved have been certified to the judge of the court for review.

Massey & Schmook, for claimant.
John S. Farrington and W. A. Rathbun, for trustee.

PHILIPS, District Judge (after stating the facts as above). The contention of the petitioning claimant is that the property in question was in custodia legis when the receiver in bankruptcy obtained possession under the seizure made by the sheriff in the action of replevin instituted in the state court; and that, as the state court first obtained jurisdiction of the subject-matter in controversy, it was exclusive of any right of the bankrupt court to proceed to administer the property. If the case were to be made to turn upon the question of fact and law as to whether there was an actual seizure and reduction to possession of this property by the sheriff as against the creditors of the bankrupt represented by the receiver, it would not be free from embarrassment. The referee has found that the property claimed by petitioner was mingled and confused with a large mass of other property in the storehouse of the Hymes Buggy & Implement Company, with no visible earmarks by which it was distinguishable from the mass. The only levy made by the sheriff was constructive, by taking the key to the building and locking it up, and afterwards undertaking to take an inventory. It was in fact conceded by the action of petitioner's counsel and agent that included in this mass of property in the storehouse were goods of a similar character not claimed by the petitioner, and a considerable portion thereof were by said attorney and agent ordered to be released in favor of other claimants. There was no segregation of the property claimed by petitioner, or removal thereof. Neither the sheriff nor petitioner's agent on the ground was able to identify the property claimed, and therefore this agent sent to his house for a bookkeeper and salesman, who came out to attempt this work of identification. He and the servant of the sheriff undertook this identification, and to make out an inventory, which inventory was not delivered to the sheriff until perhaps the morning of the 4th of May, the day of the institution of the proceedings in bankruptcy against the Hymes Buggy & Implement Company. This list did not correspond with the items claimed in the writ of replevin, nor accord with the list as presented in the petitioner's claim presented to the referee in bankruptcy. Under the state of proofs in the record before the court, it would be something

of guesswork as to what particular property the court should order turned over to the petitioner if his petition were granted.

·But passing this by, it affirmatively appears from the referee's findings, and the evidence amply sustains it, that whatever possession of the goods the sheriff acquired under the writ of replevin was on the 4th day of May, 1904, voluntarily surrendered by him to the receiver in bankruptcy. This constituted an abandonment of his seizure, and entitled the receiver in bankruptcy, as the representative pro hac of the debtor and creditors, to receive and to hold it. It is a well-settled rule of law that a release of the goods levied on or seized under writ by a sheriff is an abandonment thereof, and invalidates the levy. Western v. Dorr, 25 Me. 176, 43 Am. Dec. 259; Dunklee v. Fales, 5 N. H. 527; Bagley v. White, 4 Pick. 395, 16 Am. Dec. 353; Commonwealth v. Contner, 18 Pa. 445; Achland v. Paynter, 8 Price, 95. As said by Lord Ellenborough in Rhodes v. Crundale, 1 Maule & Selwyn, 711: "I am not aware of any case where, upon an abandonment of possession by the sheriff, the goods have still been holden to remain in the custody of the law." Up to the time of this controversy the sheriff had not made his return to the court of his seizure; and if he returns the fact (as he must) his·return will show that he did not deliver the goods to the petitioner, but to McDavid, the receiver in bankruptcy; and therefore, as said in Commonwealth v. Contner, 18 Pa. 446, "the legal effect of the whole return is that there is at the time of the return no existing levy at all." This is sufficient to repel the petitioner's demand. The court does not, however, wish it understood that it is of opinion that the sheriff, by releasing whatever possession he had of the property, incurred any liability to the petitioner. On the contrary, his action was commendable, in my judgment, under a proper construction of the bankrupt act. I am not unmindful of the view to the contrary, entertained by judges entitled to high respect. But a consideration of the policy, purposes, and scheme of the entire bankrupt act has persuaded my mind that the general rule that the court which first obtains jurisdiction of the subject-matter retains it to the exclusion of all other courts which are later asked to deal with it is limited in many respects by the national bankrupt act. Section 11a is a marked illustration of this fact, which declares that:

"A suit which is founded upon a claim from which a discharge would be a release, and which is pending against a person at the time of the filing of a petition against him, shall be stayed until after an adjudication or the dismissal of the petition; if such person is adjudged a bankrupt, such action may be further stayed until twelve months after the date of such adjudication, or, if within that time such person applies for a discharge, then until the question of such discharge is determined." Act July 1, 1898, c. 541, 30 Stat. 549 [U. S. Comp. St. 1901, p. 3426].

No matter what the character of the suit, if the claim asserted be such as a discharge in bankruptcy would operate as a release therefrom, the bankrupt court is empowered to stay its prosecution, in furtherance of the policy of the act authorizing the bankrupt court to administer and distribute the insolvent estate. As the action of replevin might well be "founded upon a claim from which a discharge would be a release," it would seem to fall within the power given to the bank-

rupt court to stay such suit pending in the state court to the extent pro-
vided in said section 11.

In further demonstration of the purpose of the bankrupt act to place
all claims, judgments, liens, and process originating within four months
preceding the institution of bankrupt proceedings against insolvents,
under the control of the court of bankruptcy, section 67f declares:

"That all levies, judgments, attachments, or other liens, obtained through
legal proceedings against a person who is insolvent, at any time within four
months prior to the filing of a petition in bankruptcy against him, shall be
deemed null and void in case he is adjudged a bankrupt, and the property af-
fected by the levy, judgment, attachment, or other lien shall be deemed wholly
discharged and released from the same, and shall pass to the trustee as a part
of the estate of the bankrupt, unless the court shall, on due notice, order that
the right under such levy, judgment, attachment, or other lien shall be pre-
served for the benefit of the estate; and thereupon the same may pass to and
shall be preserved by the trustee for the benefit of the estate as aforesaid. And
the court may order such conveyance as may be necessary to carry the pur-
poses of this section into effect: provided, that nothing herein contained shall
have the effect to destroy or impair the title obtained by such levy, judgment,
attachment or other lien, of a bona fide purchaser for value who shall have
acquired the same without notice or reasonable cause for inquiry." Act July
1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450].

True it is that the term "all levies" would ordinarily in practice ap-
ply to a seizure under execution for the collection of money on a judg-
ment. But looking at the connection and the whole statute, it is diffi-
cult to escape the conclusion that Congress employed the term "all
levies" in its most comprehensive sense, covering any and all seizures
of property of the bankrupt within the four months' period, under legal
process, looking to the enforcement of claims against the bankrupt
which would be released by his final discharge. Why nullify judg-
ments, attachments, or other liens "against a person who is insolvent,
at any time within four months prior to the filing of a petition in
bankruptcy against him," and yet leave the claimant free to seize the
property of the insolvent under replevin process? A mortgagee un-
der the provisions of a chattel mortgage covering all the personal prop-
erty of the insolvent may, on default, be entitled to take possession of
the property and sell it to satisfy his claim. If, as he might do, he
should bring suit to foreclose, the suit could be stayed, as provided under
section 11; and if he obtained judgment of foreclosure within four
months, under section 67f, it could not be enforced by levy. Yet it is
contended that by resorting to the action of replevin he can, within the
four-months period, seize the property of the insolvent under process
of a delivery order, and turn it over to the claimant, who can proceed to
sell and transfer title, notwithstanding on the day of the seizure pro-
ceedings in bankruptcy, in the interest of all creditors, be instituted
against the debtor, on which he is adjudged a bankrupt. Another
claimant has a vendor's lien on specific personal property held by the
bankrupt, which he may bring suit in equity to enforce, and obtain a
judgment; yet, if the execution issues thereon within the four-months
period to enforce the judgment, it is annulled by the bankrupt act.
Why it should have been in the mind of Congress to exclude the pro-
cess of seizure in the action of replevin, to assert a claim of ownership
and right of possession, denied by the bankrupt, and which all the

other creditors may controvert, passes my understanding. There is good reason why the court of bankruptcy, charged with the duty of marshaling and distributing the entire estate of the bankrupt, should be intrusted with the function of hearing and determining the priorities of creditors of the bankrupt, including claimants to the possession of personal property under contracts and liens, as well as any other character of claim. The case at bar affords an apt illustration of the inequality and absurdity of allowing an exemption from the operation of section 67f in favor of a claimant who proceeds by writ of replevin. The evidence in this case shows that almost simultaneously with the institution of the replevin suit the petitioner instituted attachment proceedings against the bankrupt, indicating that it knew of the insolvency, and seized goods in the mass of property in said storehouse, but without segregating them. Becoming aware, doubtless, that the seizure under the writ of attachment would be nullified by the institution of proceedings in bankruptcy, the petitioner, under advice of counsel, let go, and resorted to the writ of replevin, the service of which was hardly complete when the proceedings in bankruptcy were instituted.

This view of the statute finds support in the opinions in the cases of In re Weinger, Bergman & Company (D. C.) 126 Fed. 875, and In re Haynes (D. C.) 123 Fed. 1001.

It results that the exceptions taken to the referee's action in disallowing the petition of the claimant are overruled.